UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:02-CV-289R

CARLOS MONTEZ LAMAR                                           PLAINTIFFS
D. L., a minor, by and through
Her father and next friend, Carlos Montez Lamar
and C. L., a minor, by and through
His father and next friend, Carlos Montez Lamar

v.

KENNETH BEYMER,                                              DEFENDANTS
DAVID HYDE, and
THE HOPKINSVILLE POLICE DEPARTMENT

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment (Dkt. #

62).  Plaintiffs have responded (Dkt. # 73).   The matter is now ripe for adjudication.   For the

reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED in part** and

**DENIED in part**.

## BACKGROUND

Mr. Carlos Montez Lamar ("Lamar"), and Miss D.L. and Mr. C.L., minors, and by and

through their father and next friend, Mr. Carlos Montez Lamar, filed these 42 U.S.C. §§1981,

1983, 1985(3) claims, in addition to two state law claims of negligence and intentional infliction

of emotional distress against Hopkinsville Police Officers Kenneth Beymer and David Hyde, in

their individual and official capacities, and against the Hopkinsville Police Department under the

theory of vicarious liability.  Specifically, the Plaintiffs argue that during the course of Lamar's

January 30, 2002 arrest: Defendants violated the Plaintiffs' Fourth and Fourteenth Amendment

rights by subjecting Lamar to an unreasonable search and seizure, excessive force used and a

1

violation of his equal protection clause rights guaranteed by the United States Constitution pursuant to 42 U.S.C. §1983; the Defendants violated the Eighth Amendment by subjecting Plaintiff Lamar to cruel and unusual punishment; the Defendants violated 42 U.S.C. §§1981 and 1985 (3) by engaging in racial discrimination and conspiracy; and the Defendants violated Kentucky state law through negligence and intentional infliction of emotional distress.

On January 30, 2002, Defendant Officers Beymer and Hyde entered the residence of Lamar, an African-American male, and his wife, Mercedes Lamar, to serve a warrant and make an arrest of Mercedes Lamar on the charge of Theft by Deception. Upon entering the residence and identifying themselves, Officer Beymer indicated to the Lamars that he was required to bring Mercedes Lamar into custody. Words between Officer Beymer and Lamar were exchanged, with Lamar asking Beymer to "tone down" his voice, and Officer Beymer responding "this is my house." At that point, Beymer told Officer Hyde to remove Mercedes Lamar from the house, which he did, leaving Beymer in the home with Lamar and his two children, Destiny and Carlos. Before leaving, Lamar asked Hyde to take Beymer with him because he did not want to be alone with Officer Beymer. In addition, Beymer then told Officer Hyde that if he heard noise coming from the house to ignore it. Officer Hyde then escorted Mrs. Lamar outside of the home.

About one minute later, after Lamar failed to follow an instruction from Officer Beymer to stop moving his hands, Officer Beymer took Lamar outside in a police choke hold restraint after having: forcefully thrown him against the couch in his apartment, placing his knee into Lamar's back, and hitting Lamar in his face and back. This happened in the presence of Lamar's children inside the home. Lamar had marks on his jaw, back and ribs, which he says came from being hit by Officer Beymer.

2

While outside, Officer Beymer then forced Lamar onto the ground.  Lamar rolled over, and may have kicked Officer Beymer in the chest while laying on the ground in trying to get the officer off of him.  Officer Hyde then came over and put handcuffs on Lamar, and Lamar was then taken to the jail.  During the course of the ride he said his handcuffs were on too tight on his hands and he needed to see a doctor for his injuries, which the Defendants did not allow at that time.  Upon arrival at the jail, the jailer instructed the Officers that Lamar needed to have medical treatment, and upon checking into the hospital he was released one hour later.  Lamar was arrested, charged, and subsequently pled guilty to the charge of Third Degree Assault on a police officer through an Alford Plea, denying his culpability throughout the course of the trial.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co*., 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence.  To support this position, he must present evidence on which the trier of

3

fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52

(1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere

existence of a colorable factual dispute will not defeat a properly supported motion for summary

judgment.  A genuine dispute between the parties on an issue of material fact must exist to

render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d

1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant

to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the

standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in

*Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric*

*Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

## I.   PLAINTIFFS CLAIMS AGAINST OFFICERS BEYMER AND HYDE

### A.   *Heck v. Humphrey*

In order to recover damages for an allegedly unconstitutional conviction or

imprisonment, or other harms caused by actions whose unlawfulness would render a conviction

or sentence invalid, the plaintiff must show that the conviction has been reversed on appeal,

expunged, declared invalid, or called into question by a writ of habeas corpus. *Heck v.*

*Humphrey*, 512 U.S. 477, 486-87 (1994).  In regards to applying *Heck*  to suits for excessive

force and illegal search and seizure brought against police officers by individuals who have been

convicted or pleaded guilty, the circuits are split as to whether or not *Heck* applies in these

instances.  However, in four cases the Sixth Circuit has recognized the standard that *Heck* does

not serve as a preclusion to *all* §1983 claims where the defendant has been convicted or

4

sentenced because of a distinction between the unconstitutional act and the crime committed by the defendant.

In *Fox v. Van Oosterum*, the Sixth Circuit Court of Appeals noted that although they did not reach the merits as to whether or not *Heck* would apply to plaintiffs not in custody, the Court distinctly mentioned the United States Supreme Court case of *Spencer v. Kemna*, where members of the Supreme Court indicated that *Heck* may not apply to non-custodial plaintiffs because, unlike incarcerated plaintiffs who have a means for a remedy through a habeas petition, non-custodial plaintiffs in a §1983 action do not have such an option. *Fox v. Van Oosterum*, 176 F.3d. 342, 353 (6th Cir. 1999), citing *Spencer v. Kemna*, 523 U.S. 1 (1998). In *Brindley v. Best*, the Sixth Circuit determined that if a §1983 claim for damages does not bear a relationship to a conviction or sentence that has not been overturned, then *Heck* does not preclude a suit by the plaintiff. *Brindley v. Best*, 192 F.3d. 525, 531 (6th Cir. 1999).  And, in *Shamaeizadeh v. Cunigan*, the Sixth Circuit noted that "Fourth Amendment claims under §1983 may be brought without setting aside the conviction only if success would not undermine the conviction and if the plaintiff alleges a compensable injury other than the conviction." *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396 (6th Cir. 1999); *See Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005).[1]

In the instant matter the Defendants assert that judgment in favor of the Plaintiffs would undermine the conviction of Lamar, and that *Heck* bars claims of excessive force when the plaintiff has been convicted of assault.  The Sixth Circuit Court of Appeals, in *Cummings v. City*

---

[1]In *Cummings v. City of Akron*, the Court held that "*Heck* is not a bar to Cummings' assertion of illegal seizure claim in the instant suit for damages.  Cummings' assault conviction cannot be disturbed whether or not he was legally or illegally seized." *Cummings* at 684.

5

*of Akron*, dealt directly with this matter in a case similar in facts and the legal issues addressed. In *Cummings*, a civil rights claim was brought against Akron Police Officers for the use of excessive force and illegal seizure under §1983. *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005).  Similar to the instant matter, the plaintiff was charged in state court criminal proceedings with multiple counts, but in the end pleaded to the charge of third degree assault upon a police officer while the remainder of the charges were dropped.  In Cummings' suit against the Akron Police Department the Court held that *Heck* precluded the excessive force claim because its success would invalidate the assault charge that he pled guilty to in criminal court and Cummings should have raised the excessive force claim as a defense in his criminal proceedings, but instead chose not to contest the charge. *Cummings* at 683.  However, the Court also determined that *Heck* did not bar the illegal seizure claim because Cummings could not raise that defense in the criminal proceeding and the legality of the arrest was not an element of his conviction of third degree assault.[2] *Id.* at 683-84.

In the instant matter, similar to *Cummings*, in criminal state court proceedings Lamar was convicted of Third Degree Assault (KRS 508.025) of a police officer by entering an Alford Plea, after having been charged with a total of five crimes including: disorderly conduct, menacing, resisting arrest, criminal mischief, and third degree assault of a police officer.  Entering an

---

[2]The Court, in examining the pertinent Ohio law stated: "[u]nder Ohio law Cummings was barred from raising the illegality of the entry into his home or the unreasonableness of the officers' initial seizure of his person as defenses to assault.  The traditional common law rule allowing individuals to resist illegal arrests has been explicitly disregarded....the (Ohio Supreme) [C]ourt held that 'in the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties whether or not the arrest is illegal under the circumstances.'" *Cummings* at 683.

Alford Plea for the third degree assault charge precludes Lamar from now bringing an excessive

force claim under §1983 because an Alford Plea constitutes a conviction for purposes of a §1983

claim. *North Carolina v. Alford*, 400 U.S. 25, 37 (1990); *U.S. v. Tunning*, 69 F.3d 107, 111 (6th

Cir. 2005).   This Court cannot allow the excessive force claim to go forward because not only

would its success invalidate the state court criminal conviction of third degree assault, but also,

under Kentucky law, Lamar could have raised the excessive force claim as a defense to the third

degree assault charge, however, he did not do so.[3] The third degree assault charge and the

excessive force claim have similar elements, and if the finder of fact determined that Officer

Beymer had used excessive force against Lamar, that finding would undermine the state criminal

court conviction, which would go against the very thing *Heck* stands for.

However, in looking at the illegal seizure claim, the *Cummings* case is on point in

allowing the claim to go before a finder of fact.   Under Kentucky law, Lamar could not have

raised the illegal seizure claim as a defense in his criminal state court proceedings.[4]   Further,

Lamar's illegal seizure claim does not disturb or in anyway undermine his third degree assault

conviction as the two charges do not have similar elements.   As stated in *Cummings*, the relevant

question becomes "whether or not the seizure of [Lamar's] person...[was] illegal, and if [so],

---

[3]In Kentucky, self-protection is a defense to third degree assault.  "Kentucky Instructions
to Juries" (1999), Justice William S. Cooper, at 135.

[4]In the Commentary to "Kentucky Instructions to Juries" (1999), Justice William S.
Cooper explains the Kentucky law similar to the Ohio law used by the Court in *Cummings* to
preclude the excessive force claim under *Heck*: "[i]f the defendant was resisting an arrest by a
peace officer, recognized to be acting under color of official authority and using no more force
than reasonably necessary to effect the arrest, he is not entitled to the defense of self-protection,
even though the arrest is unlawful...the defense applies only if the assault was intentional" at
693.

whether [Lamar] suffered a compensable injury." *Id.* at 684.  However, for the seizure claim Lamar must prove a compensable injury other than the conviction or an excessive force claim to recover damages, enough facts remain in issue to allow the claim to go before the finder of fact. The seizure claim was not adequately argued.  The trial shall determine if enough facts are shown to sustain this claim.

Therefore, this Court finds that *Heck v. Humphrey* bars the Plaintiffs' claims of use of excessive force, but does not bar the claim of unreasonable search and seizure.

**B.**    ***Qualified Immunity for Excessive Force & Illegal Seizure Claims***

Though the excessive force claim against the Defendants has been precluded under *Heck*, an analysis for qualified immunity purposes indicates that Officer Beymer would not be qualified for qualified immunity under an excessive force claim.  In addition, though the Defendants mention the illegal seizure claim in their heading, they do not address this claim in their Motion for Summary Judgment, nor do they assert that Officers Beymer and Hyde should receive qualified immunity for the illegal seizure claim, and this Court will not take it upon itself to make that argument for the Defendants.  However, the Defendants do argue that Officers Beymer and Hyde are entitled to qualified immunity for the claims of excessive force.  In *Harlow v. Fitzgerald*, the United States Supreme Court held that government officials performing discretionary functions are generally shielded from civil liability so long as their conduct does not violate constitutional rights or statutory provisions of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The sequence of analysis to determine qualified immunity is a two-step process that includes: 1) taking into consideration whether a constitutional right has been violated; and 2) if so, determining whether

8

it is a clearly established right that a reasonable official under the circumstances should know. *Wilson v. Layne*, 526 U.S. 703 (1999); *Saucier v. Katz*, 553 U.S. 194, 201 (2001).

In addressing whether or not the officers are entitled to qualified immunity, each officer should be evaluated individually in order to determine whether or not their actions were reasonable under the circumstances.

### 1. Officer Beymer

Officer Beymer has claimed, and the criminal trial judge acknowledged, that Lamar disobeyed a lawful order after Officer Beymer had instructed Lamar to stop making gestures with his hands.[5]  However, up until the time Lamar allegedly kicked Officer Beymer and Officer Hyde arrested Lamar by placing handcuffs on him, questions remain as to how, when, and why Lamar had marks on his jaw, ribs and back after being left alone with Officer Beymer, with the facts indicating that the injuries Lamar sustained came from Officer Beymer.  In their Motion for Summary Judgment the Defendants offer no explanation or facts as to what took place during that interval of time, but insist that Officer Beymer made a "split-second" decision that was reasonable under the circumstances due to the uncontested facts that Lamar disobeyed a lawful order and plead guilty to assault in the Third Degree.

Still, the facts indicate that the officers' purpose in entering the Lamars' home was to arrest Mercedes Lamar, and this objective was accomplished regardless of Lamar's subsequent actions, as Officer Hyde was able to escort Mercedes Lamar out of the home without issue.  In addition, after Lamar did not obey Officer Beymer's instruction, the Defendants offer no facts as

---

[5]Taken from Defendants' Motion for Summary Judgment (Dkt. 62) at 18-19; Plaintiffs' Motion for Summary Judgment (Dkt. 73), at 6-7.

to what took place after that moment, or how Lamar posed an immediate threat to Officer

Beymer. *Graham v. Connor*, 490 U.S. 386, 396 (1990).  The Defendants offer no explanation as

to why Officer Beymer needed to or insisted upon staying in the home with Lamar after Officer

Hyde escorted Mercedes Lamar outside, especially in light of the fact that Lamar was not under

arrest and did not have a warrant for arrest served upon him.  Further, the testimony of Lamar

states that Officer Beymer attacked him without provocation and with unreasonable force.

Simply put, there is a factual dispute as to what happened in the home.  Therefore, under these

circumstances, cast in a light most favorable to the Plaintiffs, a constitutional violation against

Lamar may have been committed by Officer Beymer.

   In *United States v. Lanier*, a case arising out of the Sixth Circuit, the United States

Supreme Court held that the existence of a decision within a circuit is not necessary for a court to

determine if there is clearly established law, but only that a reasonable person under the

circumstances would know that their actions violated another person's constitutional right.

*United States v. Lanier*, 520 U.S. 259 (1997).  Additionally, the officer must have "fair warning"

that their conduct was unconstitutional. *Hope v. Pelzer*, 122 S. Ct. 2508, 2516 (2002).  In the

instant matter, a reasonable person under similar circumstances as Officer Beymer should have

known that he need not hit a person in his jaw, ribs and back, and subsequently place him in a

choke hold in order to subdue him unless the situation required such action.  Here, the

Defendants offer no facts that substantiate the necessity of hitting Lamar in his jaw, ribs and

back, other than a vague explanation that Lamar  was moving his hands.  Officer Beymer should

have known that such conduct was unconstitutional and had fair warning that his actions were

impermissible because reasonable police officers know that unnecessarily beating a person in

order to take him into custody violates the suspect's rights under the Constitution. As noted earlier, Lamar stated that excessive force was used and it was unprovoked. Therefore, a reasonable person would have known that such actions were unconstitutional.

Therefore, this Court holds that Officer Kenneth Beymer does not have qualified immunity for his conduct committed against Carlos Montez Lamar on January 30, 2002, in regards to the claims of excessive force and illegal seizure.

### 2. Officer Hyde

Both parties acknowledge that Officer Hyde, an officer in training at the time of the incident, escorted Mercedes Lamar out of the Lamar home, and subsequently placed handcuffs on Lamar following his altercation with Officer Beymer. Additionally, Plaintiffs claim that Lamar asked Officer Hyde not to leave him alone with Officer Beymer. The Plaintiffs claim that Officer Hyde's omissions, in leaving Officer Beymer alone in the house with Lamar, violated Lamar's constitutional rights because it subjected him to excessive force at the hands of Officer Beymer. However, the facts do not indicate that Officer Hyde turned a deaf ear to the conduct by Officer Beymer. The subjective state of mind of Officer Hyde cannot be looked at in the instant matter, but his actions may only be looked at using an objective reasonable person standard. In doing so, a reasonable officer under similar circumstances would have obeyed his superior officer's orders to take Mercedes Lamar outside because she was the reason why the officers came to the Lamars' home in the first place. Further, no physical altercation between Officer Beymer and Lamar had taken place prior to Officer Hyde escorting Mercedes Lamar outside, leaving a reasonable officer under the circumstances with no reason to expect foul play.

Therefore, this Court finds that Officer David Hyde has qualified immunity in regards to

the Plaintiffs' claims of excessive force and illegal seizure.

### 3. Excessive Force

The United States Supreme Court has held that all claims made against law enforcement officers that they used excessive force during the course of an arrest or seizure should be analyzed under the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1990). To prevail, the plaintiff must show: 1) significant injury; 2) that resulted from the use of clearly excessive force; and 3) that the force was objectively unreasonable. *Id.*; *Johnson v. Morel*, 876 F.2d 477 (5th Cir. 1989). In emergency situations, the conduct of the government official must also "shock the conscience" in order to amount to excessive force by an officer, without taking into consideration his state of mind or intent. *County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998).

After arriving at the jail, the jailer told Officers Beymer and Hyde that Lamar needed medical treatment for his injuries. Lamar was taken to the hospital, treated, and released one hour later. The Defendants claim that Officer Beymer needed to make a split-second decision to respond to Lamar gesturing with his hands, but offer no reasoning as to why he needed to make such a decision other than Lamar's motioning with his hands, and his failure to follow Beymer's instruction to quit making motions with his hands. Further, as mentioned *supra*, the Defendants offer no reason as to why an objective person would have to use such force on Lamar as Officer Beymer did on January 30, 2002. The Defendants provide no details as to what exactly Lamar did to provoke the injuries he sustained. In addition, the facts as offered by the Defendants, in a light most favorable to the Plaintiffs, do not indicate that Officer Beymer was in an emergency situation that required a split second decision. Rather, Officer Beymer asked Officer Hyde to

12

take Mercedes Lamar outside and instructed Lamar to stop making motions with his hands.  In

addition, Lamar testified that Officer Beymer attacked him without provocation.  These facts do

not demonstrate that an emergency situation had arisen.  Therefore, the actions of Officer

Beymer do not have to shock the conscience in order to amount to excessive force.

Therefore, not withstanding the conclusion that *Heck* precludes the excessive force

claim, this Court finds that a question of material fact exists based upon the conduct of Officer

Kenneth Beymer on January 30, 2002, as to whether or not he used excessive force.

###   C.   *Qualified Immunity for the Equal Protection Claim*

When a §1983 plaintiff states a claim under the equal protection clause, the plaintiff

must prove by "requisite direct, circumstantial, or statistical evidence that he was the target of

racial profiling." *United States v. Saucedo*, 226 F.3d 782, 790 (6th Cir. 2000).  This burden

requires more than speculation. *Id.* at 790.  In addition, the plaintiff must allege that the officer

intentionally discriminated against a member of a protected class. *LRL Properties v. Portage

Metro Housing Authority*, 55 F.3d 1097, 1111 (6th Cir. 1995) citing *Henry v. Metropolitan

Sewer Dist.*, 922 F.3d 332, 341 (6th Cir. 1990).

In the instant matter, the Plaintiffs have offered the sworn affidavits of Hopkinsville

citizens who claim to be the victims of racially motivated Hopkinsville Police Department

conduct; the testimony of Lamar; and newspaper articles from the *Kentucky New Era*, which

discuss and investigate the possibility of racially motivated actions and prejudice by the

Hopkinsville Police Department.  However, despite their evidence proffered, the Plaintiffs have

not met the burden as required by *Saucedo* and *Henry*.  The plaintiffs have not alleged any

specific incidents or specific racial intent related to this particular matter or any actions or

statements made by Officers Beymer and Hyde, as well as Chief of Police Kermit Yeager, which show that the activities in question were racially motivated in violation of the Equal Protection Clause. The evidence provided, though compelling, does not prove that Lamar was the target of racial profiling, especially because the Officers went to his home in order to serve a warrant upon and arrest his wife. In addition, though the question concerning the conduct of Officer Beymer remains under scrutiny, Lamar did disobey a lawful police order, indicating that the motivation for the altercation came from that particular action, rather than racial motivation.

Therefore, as a matter of law, this Court finds that Officers Beymer and Hyde are entitled to qualified immunity as to the Equal Protection Clause claim.

### D. Qualified Immunity for Cruel and Unusual Punishment

The United States Supreme Court, in *Farmer v. Brennan*, set up a two prong analysis in order to determine whether or not the actions of a government official violate the cruel and unusual punishment provision of the Eighth Amendment, which includes: an objective step, looking to see if the deprivation of medical treatment was sufficiently serious and that he was not provided with "the minimal civilized measure of life's necessities;" and a subjective step, looking to see if the government official had culpable state of mind in regards to the alleged victim's health and safety, "demonstrating a deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

In the instant matter, the Plaintiffs do not meet the objective prong of the *Farmer* test. At no point was Lamar denied the minimal measure of livelihood in regards to his health. Upon arrival at the jail, the jailer instructed Officers Beymer and Hyde to take Lamar in for medical

14

treatment, in which they did, and whereby Lamar was released from the hospital one hour later. Although Lamar did suffer harm to his face, the harm did not put the life of Lamar in serious jeopardy, nor did it require serious medical treatment as Lamar was released from the hospital one hour after admittance on January 30, 2002.

Additionally, the Plaintiffs do not meet the subjective prong of the *Farmer* test.  Though the Plaintiffs may rightfully assert that Officer Beymer wrongfully attacked Lamar and thus caused the injuries to his person, at no point do the Plaintiffs assert that Lamar was explicitly denied medical treatment for *life threatening* injuries (emphasis added).  The facts offered demonstrate that Officers Beymer and Hyde, upon order from the jailer, took Lamar to the hospital.  Further, the injuries sustained by Lamar, based upon the facts in a light most favorable to the Plaintiff, do not amount to the level of seriousness as provided for by the US Supreme Court, in that an officer must be deliberately indifferent to a serious injury, whereas in the instant matter, Lamar was treated and released one hour later with no consistent lasting physical effects.

Therefore, as a matter of law, this Court finds that Officers Beymer and Hyde are entitled to qualified immunity as to the claim for Cruel and Unusual Punishment.

### E.       Qualified Immunity for the 42 U.S.C. §1985(3) Racial Discrimination Claim

The Sixth Circuit has held that in order to establish a claim for conspiracy under civil rights statute 42 U.S.C. §1985(3), the plaintiff must prove: (1) conspiracy involving two or more persons; (2) a deprivation, directly or indirectly, affecting a person or class of persons entitled to equal protection of the laws; (3) an act in furtherance of conspiracy; and (4) such act causes injury to person or property, or deprivation of any right or privilege of a citizen of the United States. *Johnson v. Hills & Dales General Hospital,* 40 F.3d 837, 839 (6th Cir. 1994).

The facts, examined in a light most favorable to the Plaintiffs, do not amount to a claim of racial discrimination or civil rights conspiracy under 42 U.S.C. §1985(3). The Plaintiffs assert that the conspiracy required under the first step of the four-part test comes from the culture of the Hopkinsville Police Department, and that it is entrenched within and amongst its officers. The Plaintiffs refer to the newspaper articles and affidavits mentioned *supra* to support this notion. However, even assuming that racial animosity towards African-Americans may have existed within the Hopkinsville Police Department at the time of the incident, no evidence provided by the Plaintiffs cites or supports a particular conspiracy amongst two or more persons geared at African-Americans in general, and specifically Lamar. Though *Johnson* held that an individual and a corporate entity may qualify as the parties necessary for a conspiracy under 42 U.S.C. §1985(3)*,* the Plaintiffs have provided no specific or circumstantial evidence to show a conspiracy between Officer Beymer and the Hopkinsville Police Department to deprive African-Americans of equal protection.

Because of the lack of a conspiracy, a necessary component to further analyze a 42 U.S.C. §1985(3) claim under steps (2)-(4), has not been met, this Court does not have to analyze the remaining elements of the test. However, in looking at the second prong of the test, as analyzed *supra*, the actions taken by Officer Beymer did not amount to racially motivated conduct, as the Plaintiffs have offered no evidence to demonstrate any racist tendencies of Officer Beymer in particular. As such, the third step of the test, requiring furtherance of a conspiracy, cannot be met because no such conspiracy exists and because there remains a lack of racial motivation involving the conduct of Officer Beymer, the third prong of the test has not been met. Lastly, though an injury has been caused to Lamar, due to a lack of a racially

motivated conspiracy to deprive a particular group in this matter  his injury cannot be attributed

to a conspiracy as required by the fourth and final prong of the test.

Therefore, as a matter of law, this Court finds that Officers Beymer and Hyde are

entitled to qualified immunity as to the 42 U.S.C. §1985(3) claim.

### F.        42 U.S.C. §1981

As part of 1866 Civil Rights Act, plaintiffs may bring suits against individuals for more

than just the making and enforcement of contracts under 42 U.S.C. §1981. *General Building*

*Contract Association Inc. v. Pennsylvania*, 458 U.S. 375, 378 (1982).  However, such suits

require that the plaintiffs prove intentional or purposeful discrimination. *Id.* at 391.  In the instant

matter, though the Defendants wrongfully asserted in their motion for summary judgment that

the Plaintiffs failed to state a claim because they interpreted 42 U.S.C. §1981 to deal only with

contract claims, as mentioned *supra*, the Plaintiffs have failed to prove any specific intentional or

purposeful racial discrimination on behalf of Officers Beymer and Hyde or the Hopkinsville

Police Department.

Therefore, this Court finds that the Plaintiffs claim must fail as a matter of law.

## II.        CLAIMS AGAINST OFFICERS BEYMER AND HYDE IN THEIR OFFICIAL
## CAPACITIES

### A.        Official Capacity

The United States Supreme Court, in a case arising from the Sixth Circuit, has held that

a "suit against a state official in his or her official capacity is not a suit against the official, but

rather a suit against the official's office." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 67

(1989).  As such, a suit against a government agent in their official capacity equates to a suit

17

against the government agency in question.  In the instant matter, the office of Officers Beymer and Hyde is the Hopkinsville Police Department.  Plaintiffs assert that in their official capacities, the actions of Officers Beymer and Hyde are linked to the City of Hopkinsville under *Monell v. Department of Social Services*. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A municipality may be held accountable for the actions of their employees *only* if these actions stem from the municipalities' own unconstitutional and illegal policies. *Monell* at 690-91 (emphasis added).  The conduct of officers acting illegally in their official capacity does not automatically equate with municipal liability, as municipalities cannot be sued for the acts of their employees, unless such acts stem from a policy or custom of the municipality. *Id.*

Therefore, this Court finds that liability against the Hopkinsville Police Department and the City of Hopkinsville cannot come solely from the acts of Officers Beymer and Hyde in their official capacity.

**III.     CLAIMS AGAINST THE CITY OF HOPKINSVILLE POLICE DEPARTMENT**

### A.     *The Hopkinsville Police Department as an entity non sui juris*

The Sixth Circuit Court of Appeals has determined that although a police department is not an entity that may be sued, the city/municipality itself can be a proper party to assert a §1983 claim against. *Matthews v. Jones*, 35 F3d 1046, 1049 (6th Cir. 1994) citing *Smallwood v. Jefferson County Government*, 743 F. Supp. 502, 503 (W.D.KY 1990).  In *Matthews*, the plaintiff did not list Jefferson County as a defendant, however, the Court allowed the suit to go forward against Jefferson County because the plaintiff had listed organs of the Jefferson County Government, including its police department, as defendants. *Matthews* at 1049.  In the instant matter, similar to *Matthews*, the Plaintiffs have listed the Hopkinsville Police Department, an

18

entity of the City of Hopkinsville, as a Defendant.  As such, the claim by the Plaintiffs does not

fail because it did not list the City of Hopkinsville as a Defendant.

Therefore, this Court finds that through the Hopkinsville Police Department, the City of

Hopkinsville is a proper Defendant in this action.

**B.        *Liability of the Hopkinsville Police Department under 42 U.S.C. §1983***

A municipality may be liable under §1983 through: (1) actions of legislative bodies;

(2) agencies exercising delegated authority that amounts to an official policy; (3) the actions of

individuals with final decision-making authority; (4) policies of inadequate training or

supervision; or (5) custom. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 473, 480, 481-484

(1986); *Monell* at 661 and 694; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-390 (1989).

As applied to the instant matter, the Plaintiffs assert that a municipal policy of the Hopkinsville

Police Department can be proven through ways (3) - (5).

**1.    Actions of Individuals with Final Decision Making Authority**

A municipality may be held liable if an official, responsible for establishing final

government policy, makes a deliberate choice to follow a course of action from among various

alternatives that leads to a final policy dealing with the legal question at hand. *Pembaur* at 483-

484.  The United States Supreme Court has determined that as a matter of law, a judge, and not a

jury, decides whether a person has final decision-making authority. *Jett v. Dallas Independent*

*School District*, 491 U.S. 701, 735, 737 (1989).  Courts may look at state and local laws, as well

as customs or usage to determine who has final-decision making authority for the purposes of

§1983. *Id.* at 737.

In the instant matter, Plaintiffs assert that Chief Kermit Yeager, Police Chief of the

19

Hopkinsville Police Department, had final decision-making authority, and that his individual decisions were proof of an official municipal policy on behalf of the City of Hopkinsville. However, Chief Yeager did not become Police Chief until February 2003; thirteen months after the incident took place.  Although Chief Yeager was a veteran of the police at the time of the incident and he may speak to the policies and customs of the Hopkinsville Police Department at that time, on the day the conduct took place Chief Yeager did not have the final decision-making authority to set a final policy for the purposes of §1983.

Therefore, this Court finds that in this matter at the time the incident took place, Chief Kermit Yeager did not have final decision-making authority for purposes of §1983.

## 2.        Inadequate Training and Supervision

The United States Supreme Court has held that in order to show a policy of inadequate training, the plaintiffs must prove a deliberate indifference by the local government. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-390.  A municipal policy that causes constitutional violations can be the basis for a §1983 claim. *Id*. at 387.  However, the Court stated that only when the failure to train is a deliberate or conscious choice by the municipality can a city be liable under §1983. *Id.* at 389.  The Court noted two circumstances that would lead to a deliberate and indifferent failure to adequately train including: failure to provide adequate training in light of foreseeable serious consequences that could result from a lack of instruction, such as how to use a firearm; and when a city fails to act in response to repeated complaints of unconstitutional acts by its officers. *Id.*  In *Commissioners of Bryan County, Oklahoma v. Brown*, the Supreme Court stated that the culpability of a municipality  must be more than mere probability that an officer could cause the constitutional injury, but rather it must depend on the

20

high likelihood that the officer would inflict the particular injury suffered by the plaintiff. *Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 412 (1997).  The Sixth Circuit recognized the *Brown* approach in *Jefferson County, Kentucky v. Lindsay*, emphasizing that a  "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Jefferson County, Kentucky v. Lindsay*, 124 F.3d 197 (1997).

In the instant matter, the Plaintiffs rely on the testimony of Police Chief Kermit Yeager in arguing that the Hopkinsville Police Department had an inadequate policy of training and supervising of its officers.  However, his deposition does not reveal any deliberate conduct or a conscious choice by the Hopkinsville Police Department to train officers to act in the manner allegedly demonstrated by Officer Beymer.  In addition, applying the heightened *Brown* standard to the instant manner, the facts and Chief Yeager's deposition do not indicate a high likelihood that Officers Beymer and Hyde would inflict the harm caused to Lamar based upon a policy or inadequate training by the Hopkinsville Police Department because not having a set policy for every imaginable police situation does not demonstrate a deliberate choice or conscious disregard for a high risk that officers would use excessive force in violation of constitutional or statutory rights.  Chief Yeager acknowledged that his officers abide by the laws that govern when an officer shall make an arrest, and use their discretion in other circumstances.  Further, though complaints have been made against the Hopkinsville Police Department for racial discrimination, the facts of the instant matter do not indicate that racial motivation led to the alleged constitutional violation, thereby not justifying a conclusion of deliberate indifference based upon repeated complaints of constitutional violations by officers.

21

Therefore, this Court finds that in this matter the Hopkinsville Police Department did not inadequately train or supervise its officers.

### 3.    Custom

The United States Supreme Court has held that municipal governments can be sued for their customs that cause constitutional violations, even if such customs have not been approved by a legislative body. *Pembaur*, 475 U.S. at 481-482 n.10.  The Sixth Circuit, in *Doe v. Claiborne County, Tenn.*, stated that a "custom" for purposes of *Monell* and §1983 is "so permanent and well settled as to constitute a custom or usage with the force of law...In turn, the notion of 'law' must include [d]eeply embedded traditional ways of carrying out state policy...It must reflect a course of action deliberately chosen from among various alternatives. In short, a 'custom' is a 'legal institution' not memorialized by written law." *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507-08 (6th Cir.1996) (internal citations omitted).  In *Doe*, the Sixth Circuit determined that the municipality did not have a custom of inaction that amounted to liability under *Monell* in failing to respond quickly enough to or acting passive during an investigation of a rape victim by a municipality employee.  The Court used a four step analysis from *City of Canton v. Harris* that examined: (1) the existence of a clear and persistent pattern of unconstitutional conduct by employees; (2) notice or constructive notice on the part of the municipality; (3) the municipality's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the municipality's custom was the "moving force" or direct causal link in the constitutional deprivation. *City of Canton*, 109 U.S. at 1204-05.

In the instant matter, the Plaintiffs have not established that unwritten customs of the

Hopkinsville Police Department were so widespread and accepted that they caused the constitutional violations alleged by Lamar.  Here, the Plaintiffs offered no definitive proof of a clear and persistent pattern of unconstitutional conduct in regards to racially motivated offenses or excessive force claims; the facts, looked upon favorably for the Plaintiffs, show that Chief Yeager and the Hopkinsville Police Department as an entity were not aware of any potential violations; the inaction complained of was not widespread, nor did the Hopkinsville Police Department condone such actions; and there is no evidence to suggest that a custom of the Hopkinsville Police Department was the moving force or encouragement behind the conduct of Officer Beymer against Lamar because the Hopkinsville Police Department did not have a policy nor did it turn a blind eye to the use of excessive force in violation of the constitution.  Though the Plaintiffs have offered some proof as to isolated incidents of potential constitutional violations based upon racial motivations, the pervasive effect demanded by *Monell* and *Doe* has not been met in order to establish liability for this particular incident.

Therefore, this Court finds that in this matter the Hopkinsville Police Department did not have a custom of committing, tolerating or acquiescing to constitutional violations.

### IV.        STATE LAW CLAIMS

#### A.   *Negligence*

In Kentucky, a negligence claim consists of: duty; a breach of that duty; and an injury to the plaintiff. *Illinois Cent. R. R. v. Vincent,* 412 S.W.2d 874, 876 (Ky. 1967).  An absence of any of these elements leads to the failure of the claim. *Id.*  Police officers may use such force as is necessary or reasonably appears to be necessary to take into custody the person they are seeking to arrest; they may use such force as may be necessary to make the arrest, but no more. KRS

431.025(3); *City of Lexington v. Gray*, 499 S.W.2d 72, 73 (Ky. 1973) *citing*, *Maggard v. Commonwealth*, 22 S.W.2d 298 (Ky. 1929).  In addition, a municipality, under the respondent superior doctrine, can be held liable for the actions of a police officer in making an unnecessary assault upon a party in carrying out an arrest. *Id.* at 74, *citing*, *Lexington v. Yank*, 431 S.W.2d 892, 894-95 (Ky. 1968).

As mentioned *supra* in analyzing the claim for excessive force, this Court acknowledged that based upon the facts provided cast in a light most favorable to the non-moving party, in this case the Plaintiffs, that notwithstanding *Heck*, Officer Beymer would not be entitled to qualified immunity based upon the excessive force claim.  Though *Heck* precludes an excessive force claim in this instance under §1983, the *Heck* preclusion does not apply to the state law claim and the standard for establishing an excessive force claim is higher than that of a state law negligence claim.  Though the Defendants may argue that Officer Beymer is entitled to qualified immunity for the state law negligence claim because he was acting in a discretionary manner in making the arrest of Lamar, this immunity does not apply if it is determined that Officer Beymer acted in bad faith. *Ashby v. City of Louisville*, 841 S.W.2d 184, 188-89 (Ky. 1992).  Bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, i.e., objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive."  *Smith v. Nesbitt*, 2003 WL 22462413, at *3-4 (Ky.App.2003), *citing*, *Yanero v. Davis, Ky.*, 65 S.W.3d 510, 523 (Ky. 2001).

Here, the facts indicate that when arresting Lamar Officer Beymer may have used

24

excessive force in violation of Lamar's constitutional rights, and in doing so, acted in bad faith. Lamar claims that after not following Beymer's order to stop moving his hands Officer Beymer threw him up against his couch, drove his knee into Lamar's back, hit him in various places around his body, and eventually choked him when taking him outside of his apartment.  These facts taken in a light most favorable to the Plaintiffs call into question whether or not Officer Beymer acted in good faith when arresting Lamar because if proven these facts could demonstrate a violation of his constitutional rights and a clear case of negligence.

Further, the standard for establishing a claim against a municipality under a theory of respondent superior is a lower standard than establishing municipal liability under *Monell*.  The Plaintiffs must show a relationship between the municipality and the officer acting in his official capacity. *Gray* at 73.  In *Gray*, the Court found that the "injuries occurred when the patrolman was attempting to arrest Mrs. Gray" in his official capacity, leading to the necessary employer-employee relationship under a theory of respondent superior. *Id.* Here, similar to *Gray*, the injuries that took place happened when Officer Beymer was attempting to arrest Lamar while Officer Beymer was on duty.  These facts taken in a light most favorable to the Plaintiff warrant the matter to go before a finder of fact to determine the whether the City of Hopkinsville is liable.

However, as mentioned *supra* and applied to the state law claims, the claims brought against Officer Hyde in his individual capacity should fail as a matter of law based upon the facts that his conduct did not cause an injury to the Plaintiffs as required under a state law negligence claim.  Here, the facts indicate that Officer Hyde did not act in bad faith when he did not come to the aid of Lamar as alleged, but instead followed an order of a superior officer, and

25

did not bear witness to the conduct inside the home, giving him no reason to expect any foul play on the part of Officer Beymer.

Therefore, the Court finds that the negligence claims against Officer Beymer in his individual capacity and the City of Hopkinsville under a theory of respondent superior shall go forward, and that the claim against Officer Hyde fails as a matter of law because he is entitled to qualified immunity.

### B.    *Intentional Infliction of Emotional Distress*

In Kentucky, intentional infliction of emotional distress was adopted from the Restatement 2d of Torts §46, which states that the tort of intentional infliction of emotional distress occurs when "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts, §46, (1965); See *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky.1984) and *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky.1990) (adopting the Restatement).

In the instant matter, the conduct of Officer Beymer did not rise to the level required as a matter of law in order to sustain a claim for intentional infliction of emotional distress. Though the conduct of Officer Beymer, even when examined in a light most favorable to the Plaintiffs, may amount to tortious conduct, in order for such conduct to reach the level legally required to support an intentional infliction of emotional distress claim it must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts §46, cmt. d (1965).  Here, the facts alleged by the Plaintiff do not reach this level because Officers Beymer and Hyde were at the Lamars' home to

26

make a valid arrest, and Officer Beymer was responding to the fact that Lamar did not follow a lawful police order.  In light of the circumstances, the conduct of Officer Beymer was not intentional, reckless or outrageous.

Therefore, this Court finds that claim for intentional infliction of emotional distress fails as a matter of law.

### V.  CLAIMS OF D.L. AND C.L.

In their initial complaint and subsequent response to the Defendants Motion for Summary Judgment, the Plaintiffs have offered no facts to support the claims of D.L. and C.L. that the Defendants have in any way violated their constitutional rights or statutory rights, and have not alleged specific facts to support the state law claims.  In this matter, the Officers at no time: used excessive force against the children, unlawfully searched them in any way, nor took them into custody.  Additionally, the facts offered by the Plaintiffs do not support the federal statutory claims made against the Defendants.  As mentioned *supra*, these charges would not survive the Defendants' motion for summary in regards to Lamar, the main victim of this complaint, and as such, the facts offered by the Plaintiffs do not favor a claim for his children.

Further, even taken in a light most favorable to the Plaintiffs, the state law claims made on behalf of the children cannot go forward as a matter of fact and as a matter of law.  The Plaintiffs have offered no facts to show that the children have suffered any permanent, damaging or lasting physical, mental or emotional injury from the incident that took place on January 30, 2002.  The Defendants did not physically or verbally attack the children, and despite the fact that the children may have witnessed unjust acts committed against their father, the Plaintiffs do not assert any emotional injury that would amount to an intentional infliction of emotional distress

27

claim.

Though not alleged by the Plaintiffs, the facts taken in a favorable light to the Plaintiffs would not support a claim against the Defendants for the negligent infliction of emotional distress.  In Kentucky, Courts have long held that absent a showing of physical injury, the plaintiffs cannot assert a claim against a defendant for the negligent infliction of emotional distress. *See, Capital Holding Corp. v. Bailey,* 873 S.W.2d 187 (Ky.1994); *Mitchell v. Hadl*, 816 S.W.2d 183, (Ky.1991); and *Deutsch v. Shein*, 597 S.W.2d 141 (Ky.1980).  Here, the Plaintiffs have not alleged any physical contact made by the Defendants against the children that caused any physical or mental injury.

Therefore, this Court finds that the Plaintiffs claims on behalf of D.L. and C.L. by and through their father Carlos M. Lamar, do not stand, and are therefore dismissed as a matter of law.

### CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

An appropriate order shall issue.